United States District Court
Southern District of Texas
ENTERED

MAY - 4 2001

Michael N. Milby, Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DARRYL STEPHEN TURNER | § | *33.* |
| | § | |
| VS. | § | C.A. NO. C-00-015 |
| | § | |
| DR. PALACIOS, ET AL. | § | |

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Institutional Division ("TDCJ-ID") and is currently incarcerated at the Gib Lewis Unit in Woodville, Texas. Proceeding *pro se* and *in forma pauperis*, plaintiff filed this civil rights action on January 14, 2000, alleging that medical personnel at the Garza West Unit in Beeville, Texas, were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. In particular, plaintiff claims that defendants denied his repeated requests for anti-seizure medication, ultimately leading to his suffering a series of grand mal seizures on October 4, 1999.

Plaintiff has sued Esteban Palacios, a physician's assistant ("PA"), and Dr. Dan Kelly, alleging that these defendants were aware of plaintiff's seizure disorder yet continued to deny him his medication and that they failed to take reasonable or appropriate steps to confirm that medication was necessary.

Each party having filed his consent (see DE #11, #19), this action was referred to the undersigned to conduct all further proceedings, including entry of final judgment (DE #12). 28 U.S.C. § 636(c). Trial is scheduled for June 11, 2001 (DE #29).[1] Pending is defendants' motion for summary judgment in which they claim they

---

[1]Plaintiff's motion for a trial setting (DE #28) is denied as moot.

did not act with deliberate indifference to plaintiff's serious medical needs (DE #24). In addition, defendants assert their entitlement to qualified immunity in their individual capacities.[2] Plaintiff has filed an affidavit in opposition to defendants' motion for summary judgment (DE #28). For the reasons stated herein, defendants' motion for summary judgment is denied.

## I.   JURISDICTION

The Court has federal question jurisdiction. 28 U.S.C. § 1331.

## II.   BACKGROUND FACTS

### A.   Plaintiff's Original Complaint.

Plaintiff claims that, upon his transfer from Bexar County Jail to the Garza West Unit, he was seen by PA Palacios for a medical evaluation on September 12, 1999. POC[3] at 3-4. According to plaintiff, he told PA Palacios that he suffered from grand mal seizures and had been taking anti-seizure medications since he was 12 years old. POC at 4-4a. PA Palacios told plaintiff that the level of medication in plaintiff's blood would need to be evaluated before he prescribed any medication. Over a week later, PA Palacios told plaintiff that his blood work was "low," indicating a non-therapeutic dosage of anti-seizure medication, and that

---

[2]To the extent that plaintiff is suing defendants in their official capacities for money damages, those claims are subject to dismissal. The defendants in their official capacities enjoy Eleventh Amendment immunity against claims for money damages. Ganther v. Ingle, 75 F.3d 207, 209 (5th Cir. 1996).

[3]"POC" refers to plaintiff's original complaint, DE #1. The facts alleged in plaintiff's sworn pleadings constitute sufficient summary judgment evidence and separate affidavits are not necessary. Sammons v. Taylor, 967 F.2d 1533, 1545 (11th Cir. 1992).

Palacios would not prescribe plaintiff any medication until he in fact had a seizure. POC at 4. On September 21, 1999, plaintiff reported to a corrections officer, Officer Gonzales, that he was feeling weak and sick, and that he had not had his anti-seizure medication since his arrival to Garza West on September 9. POC at 4a. Officer Gonzales called medical and then reported back to plaintiff that medical would not give him the anti-seizure medication until he had a seizure. POC at 4a.

On October 5, 1999. plaintiff had 5 or 6 grand mal seizures and was taken to the hospital. POC 4a. The hospital staff told him he should have been continued on his anti-seizure medication. POC at 4a.

## B. **Spears hearing testimony.**

A Spears hearing was held on February 24, 2000. Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At the hearing, plaintiff testified that when he was ten years old he was diagnosed with a seizure disorder and placed on Dilantin and phenobarbital. Tr[4] at 6. When he was 21, his physician discontinued the phenobarbital, and six years later, changed his medication from Dilantin to Depakane, 1000 milligrams in the morning and 500 milligrams in the evening. Tr 6.

While incarcerated at the Bexar County Jail, plaintiff received his anti-seizure medication. Tr 6. He arrived at the Garza West Unit on September 9, 1999, and three days later, at an initial medical examination, plaintiff informed PA Palacios that he suffered from grand mal seizures and what type of medication he was taking. Tr 6. PA Palacios said that he had no record that

---

[4]"TR" refers to the Spears hearing transcript filed at DE #32.

plaintiff was on any medication.  Tr 7.  Plaintiff informed PA
Palacios of the type of medication, how many milligrams, and how
long he had been taking it, but PA Palacios said that he would have
to check plaintiff's blood levels before he issued any medication
because inmates might feign seizure disorders to be assigned a
bottom bunk or lighter work duty.  Tr 7.  Plaintiff told PA
Palacios that he had no reason to lie about his medical health and
would not want to take medication that he did not need, but PA
Palacios said he would still need to check plaintiff's blood
levels.  Tr 7.  Plaintiff was later called back to the infirmary at
which time PA Palacios said that plaintiff's blood levels were low,
indicating that he did not have any medication in his system; PA
Palacios said he would not prescribe any medication until plaintiff
experienced a seizure.  Tr 8.

Plaintiff complained to the prison staff and officers, sending
I-60s and even a grievance.  Tr 8.  Plaintiff complained to Officer
Garcia[5] on September 21, 1999, who called medical.  Tr 8.  Officer
Garcia reported to plaintiff that Nurse Guerrero stated that
plaintiff would not receive any medication until medical staff saw
him have a seizure.  Tr 9.

Plaintiff testified that several officers told him to send in
sick calls to get the problem resolved.  Tr 9.  Plaintiff claims
that half of his sick calls were not acknowledged, while one reply
commented that he would see a physician soon since he would soon be
in transit to another facility.  Tr 9.

Plaintiff testified that he signed a consent form to get his
medical records from Bexar County Jail released to the TDCJ-ID.  Tr

---

[5]It appears that Officer Garza is the same individual identified in
plaintiff's complaint as Officer Gonzales.

10.   Plaintiff claims that he asked PA Palacios to call Bexar County Jail to verify that he was taking the anti-seizure medications, but that PA Palacios responded that it was the prison's routine to fax the information between institutions.  Tr 10-11.  Plaintiff claims he waited a week and then asked if his paper work had been received, but was told it had not arrived.  Tr 11.  Plaintiff asked PA Palacios to call his family physician in Chicago, offering that physician's phone number, and also wrote to his mother stating that PA Palacios might be contacting her, but there was no indication that this was ever done.  Tr 11.

Plaintiff testified that his medications were not given to him to carry when he left Bexar County Jail.  Nor was his medical chart sent to TDCJ.  Tr 12.  Instead, plaintiff said a form from the Jail was sent with him that stated he had a seizure disorder, although it did not indicate that he was taking any prescribed medications.  Tr 12-13.  According to plaintiff, the form indicating that he had a seizure disorder was in his file at Garza West.  Tr 12-13.

Plaintiff testified that he is suing Dr. Kelly because Dr. Kelly has the authority to approve requested medication.  Tr 14.  Plaintiff claims that he sent Dr. Kelly several I-60's requesting that he receive the medication, but that his requests were simply returned with no reply.  Tr 14.

**C.   Defendants' motion for summary judgment and summary judgment evidence.**

In support of their motion for summary judgment, defendants[6] offer copies of plaintiff's TDCJ-ID medical records from September

---

[6]Neither defendant has filed an affidavit or a declaration made under penalty of perjury of law.

1999 through January 2000. DSJ[7] Ex. A. These records have been authenticated and constitute appropriate summary judgment evidence.

In addition, defendants offer the "expert witness report" of Dr. M.J. Herrera, the McConnell Unit medical director, wherein Dr. Herrera states that PA Palacios never had available to him any of plaintiff's medical records "collaborating [sic] the history medication for seizures." DSJ Ex. B at 2. Dr. Herrera concludes that "the clinical presentation of [plaintiff] with acute grand mal seizures on October 4, 1999, was the only indication for [plaintiff] to continue his anti-convulsive therapy." DSJ Ex. B.

Dr. Herrera's statement, Exhibit B, is not an original, nor is it sworn to or made under penalty of perjury. The Court declines to consider Exhibit B as appropriate summary judgment evidence.[8] Fed. R. Civ. P. 56(e).

## III.  APPLICABLE LAW

### A.  Summary judgment standard.

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the

---

[7]"DSJ" refers to defendants' motion for summary judgment, DE #24.

[8]Because the report does not constitute appropriate summary judgment evidence and is rejected for this reason, the Court need not address the report's other potential evidentiary infirmities.

pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); <u>Williams v. Adams</u>, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. <u>Celotex Corp.</u>, 477 U.S. at 322-23, 106 S. Ct. at 2552; <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514 (1986); <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), <u>cert. denied</u>, 506 U.S. 825, 113 S. Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990); <u>Anderson</u>, 477 U.S. at 255, 106 S. Ct. at 2514.

**B.   Section 1983 claims.**

To state a claim under § 1983, a plaintiff must allege (1) that he was deprived of a federal protected right or interest "secured by the Constitution and laws of the United States," and (2) that the deprivation occurred under color of law. <u>West v. Adkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). However, because of realities of incarceration and inherent conflict with various penological objectives, constitutional protections are considerably more circumscribed than those of the general public. <u>Powell v. Estelle</u>, 959 F.2d 22, 23 (5th Cir.), <u>cert. denied</u>, <u>Harrison v. McKaskle</u>, 506 U.S. 1025, 113 S. Ct. 668 (1992) (citing

Pell v. Pecunier, 417 U.S. 817, 822-23, 94 S. Ct. 2800, 2804 (1974)).

C.    **Qualified immunity.**

In addition to stating a constitutional violation, to prevail on a § 1983 claim, a plaintiff must defeat a defendant's claim of immunity.  Defendants have raised immunity as a defense and seek summary judgment on this basis.

Public officials acting within the scope of their duties are shielded from civil liability by the doctrine of qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 815-19, 102 S. Ct. 2727, 2736-38 (1982).  Assessing the defense of qualified immunity is a two-step process. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992).  First, using "currently applicable constitutional standards," Rankin v. Klevenhagen, 5 F.3d 103, 106 (5th Cir. 1993), the court determines whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." Siegart v. Gilley, 500 U.S. 266, 111 S. Ct. 1789 (1991).  If so, the court then decides whether the defendant's conduct was objectively reasonable, since "[e]ven if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." Nerren v. Livingston Police Dept., 86 F.3d 469, 473 (5th Cir. 1996).  And see Snyder v. Trepagnier, 142 F.3d 791 (5th Cir. 1998).

D.    **Deliberate indifference to serious medical needs**

Plaintiff claims that defendants were deliberately indifferent to his serious medical needs by failing to prescribe him his anti-seizure medication and/or failing to take reasonable steps to determine that the medication was in fact necessary.

In Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976), the Supreme Court acknowledged that a failure to provide medical care for a prisoner can give rise to Eighth Amendment violations; however, not every failure to provide adequate medical care is a violation of the Constitution. Estelle, 429 U.S. at 105, 97 S. Ct. at 291. Prison officials are liable for failure to provide medical treatment only if they are deliberately indifferent to a prisoner's serious medical needs. Id. at 104-05, 97 S. Ct. at 291.

A prison official acts with deliberate indifference if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 847, 114 S. Ct. 1970, 1984 (1994).

> ... a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837, 114 S. Ct. at 1979. Subjective recklessness, as used in the criminal law, is the appropriate test for deliberate indifference. Id. at 838-40, 114 S. Ct. at 1978-81. Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk. Id. at 843 and n. 8, 114 S. Ct. at 1981-82 and n. 8.

Defendants do not dispute that a seizure disorder is a serious medical condition which, if left untreated, poses a substantial risk of harm.

Deliberate indifference may be shown when prison officials have denied an inmate recommended treatment or have denied him

9

access to medical personnel capable of evaluating the need for
treatment.  West v.Keve, 571 F.2d 158 (3d Cir. 1978); Inmates of
Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979); Ramos
v. Laxum, 639 F.2d 559 (10th Cir. 1980), cert. denied, 450 U.S.
1041, 101 S. Ct. 1759 (1981).  Delay in treatment may be actionable
under § 1983 if the delay results in substantial harm.  See Mendoza
v. Lynaugh, 989 F.2d 191 (5th Cir. 1993).  Evidence of efforts by
prison staff to attend to the need will negate a finding of
deliberate indifference.  Jackson v. Cain, 864 F.2d 1235, 1246 (5th
Cir. 1989).  Allegations of mere negligence, neglect or medical
malpractice do not invoke a violation of the Eighth Amendment.
Estelle, 429 U.S. at 105, 97 S. Ct. at 291; Norton v. Dimazana, 122
F.3d 286, 292 (5th Cir. 1997); Mendoza v. Lynaugh, 989 F.2d 191,
195 (5th Cir. 1993); Fielder v. Bosshard, 590 F.2d 105 (5th Cir.
1979).

## IV.   DISCUSSION

### A.   Defendant PA Palacios.

PA Palacios claims that he is entitled to summary judgment
because (1) he did not violate plaintiff's constitutional rights
and (2) even if he were deliberately indifferent to plaintiff's
serious medical needs, he is entitled to qualified immunity.

PA Palacios argues that no constitutional violation occurred
because plaintiff "received adequate and timely medical attention"
and that plaintiff's complaint is merely a disagreement over the
type of treatment plaintiff received.  DSJ at 6.  In support of
this argument, PA Palacios points to plaintiff's medical records
that show plaintiff was seen by the Garza West medical staff,
including PA Palacios, on numerous occasions.  See DSJ Ex. A.

The test for deliberate indifference to a serious medical need is not merely whether or not an inmate was denied access to the infirmary, but whether the defendant was aware of a serious medical risk to an inmate's health and safety, yet failed to take reasonable measures to abate that risk.  <u>Farmer</u>, 511 U.S. at 847, 114 S. Ct. at 1984.

Here, plaintiff arrived at the Garza West Unit on September 9, 1999, at which time he informed the intake nurse that he was on Depakane.  DSJ Ex. A at 24.  His seizure disorder was noted on the TDCJ intake screening forms, as was his claim to be on Depakane.  DSJ Ex. A at 6, 12, 23, 24.  The Bexar County Health Status form, which plaintiff claims accompanied him to Garza West, reflects that he suffers from a seizure disorder.  <u>Id</u>. at 1.  Four days after his arrival, plaintiff was seen by PA Palacios; according to plaintiff, Palacios reviewed at that time the Bexar County Health Status Update form which states that plaintiff has a seizure disorder. DSJ Ex. A at 1; Tr 12-13.  Although no current medications were listed on the form, plaintiff told PA Palacios at that time that he had taken medications since he was 10 or 12 years old and he offered specific details of the names of his medications and dosages.  POC at 4-4a; Tr 7.  His history of seizure disorder was noted by Palacios, DSJ Ex. A at 10, 11, who also ordered lab work, DSJ Ex. A at 23, 24. The medical records reflect that Palacios authorized, on September 13, 1999, that plaintiff's medical records from Bexar County Jail be requested, DSJ Ex. A at 24, although plaintiff's consent for these documents was not obtained until September 22.  <u>Id</u>. at 3.

On September 21, 1999, plaintiff complained of his feet swelling and inquired about his medication, but was told to wait

until his appointment the following day.  DSJ Ex. A at 22.  On
September 22, 1999, PA Palacios told plaintiff that his Vaproic
acid level was low, indicating a non-therapeutic dosage of
Depakane.[9]  RSJ Ex. A at 21.  Curiously, PA Palacios did at that
time assign plaintiff to a lower bunk and ordered work
restrictions, but no medications were prescribed.  DSJ Ex. A at 21.
According to plaintiff, PA Palacios stated that he had still not
received plaintiff's medical records from Bexar County Jail, but
declined to call the Jail for the records or to call plaintiff's
family physician in Chicago.  Tr 10-11.

Viewing the facts in the light most favorable to plaintiff, it
cannot be said that Palacios is entitled to judgment as a matter of
law.  Plaintiff has offered facts from which a jury could conclude
that Palacios was aware of a substantial risk of harm (a seizure
patient without medication), and that his conduct amounted to
deliberate indifference.  A jury could find that it was reckless of
Palacios not to call Bexar County Jail or plaintiff's Chicago
physician to confirm the need for medication in light of
plaintiff's persistent and specific claims as to medications and
dosages, or to take other reasonable steps to obtain the necessary
information in an expedient manner, or to at least consult promptly
with a physician concerning plaintiff's claimed need for
medication.  Moreover, Palacios allegedly stated on several
occasions that he would not prescribe plaintiff anti-seizure
medication until he had witnessed plaintiff have a seizure; a jury
could find such conduct to be evidence of a disregard of a

---

[9]The summary judgment evidence does not address the fact that the blood
analysis had been conducted after plaintiff had been without his medication
for at least four days.

substantial risk of harm. PA Palacios' motion for summary judgment on the grounds of no constitutional violation is denied.

Factual disputes will not preclude the entry of summary judgment on the basis of qualified immunity if the Court, accepting all of plaintiff's allegations as true, still concludes that the defendants' conduct was objectively reasonable. Colston v. Barnhart, 130 F.3d 96, 99 (5th Cir. 1997), cert. denied, 525 U.S. 1054, 119 S. Ct. 618 (1998) (citing Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir. 1996); see also, White v. Balderama, 161 F.3d 913 (5th Cir. 1998). If plaintiff's allegations are taken as true, PA Palacios' conduct would not be objectively reasonable. Moreover, defendants do not concede that plaintiff's rendition of the facts is true, but rather base their entitlement to qualified immunity upon plaintiff's medical records alone, which they offer to refute his allegations. The Court cannot conclude on this summary judgment record that PA Palacios' actions were objectively reasonable as a matter of law.

## B.    Dr. Kelly.

Plaintiff claims that he sent numerous I-60's to Dr. Kelly requesting that he receive anti-seizure medication, but that these requests were returned unanswered. Tr 14.

In his motion for summary judgment, Dr. Kelly does not respond to this allegation by affidavit or otherwise. Rather, relying on plaintiff's medical records, he argues that his involvement with plaintiff was minimal. DSJ at 10-11. His defense fails to address plaintiff's claim that Kelly was aware, through the I-60's, of a substantial risk of harm yet did nothing. Summary judgment is not warranted.

Similarly, the record does not establish that Dr. Kelly's actions, even if violative of the Eighth Amendment, were objectively reasonable so as to entitle Dr. Kelly to the defense of qualified immunity.  As with PA Palacios, Dr. Kelly does not concede that plaintiff's rendition of the facts is true, but rather bases his entitlement to qualified immunity upon plaintiff's medical records alone, which are offered to refute plaintiff's allegations. The Court cannot conclude on this summary judgment record that Dr. Kelly's actions were objectively reasonable as a matter of law.

### V.  **CONCLUSION**

Defendants have failed to establish the absence of a genuine issue of material fact or that they are entitled to judgment as a matter of law.  Accordingly, defendants' motion for summary judgment is denied.  The case shall proceed to trial in accordance with the scheduling order entered February 8, 2001 (DE #29).

ORDERED this _____ day of May, 2001.


JANE COOPER-HILL
UNITED STATES MAGISTRATE JUDGE

14